**UNITED STATED DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| LYON FINANCIAL SERVICES, INC., d/b/a USBANCORP MANIFEST FUNDING SERVICES,<br><br>Plaintiff,<br><br>v.<br><br>RINKU M. DUTT, individually and d/b/a RINKU M. DUTT, M.D., LUNA EYE CENTERS OF GREENSBURG, PC, and MAZIN YALDO,<br><br>Defendants.<br><br>And<br><br>RINKU M. DUTT, individually and d/b/a RINKU M. DUTT, M.D.,<br><br>Cross-Claim Plaintiff,<br><br>v.<br><br>MAZIN YALDO,<br><br>Cross-Claim Defendant.<br><br>And<br><br>RINKU M. DUTT, individually and d/b/a RINKU M. DUTT, M.D.,<br><br>Third Party Plaintiff,<br><br>v.<br><br>BANNER PHYSICIANS CAPITAL and | CASE FILE NO: 08-04735 (RHK/JSM)<br><br>**AMENDED CROSS CLAIM AND THIRD PARTY COMPLAINT OF DEFENDANT RINKU M. DUTT, M.D.** |

ALEX PUNJARI, )
)
Third Party Defendants. )
)

---

**AMENDED CROSSCLAIM AND THIRD PARTY COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 14 and 15, Rinku M. Dutt by way of crossclaim against defendant Mazin Yaldo and by way of third-party complaint against third-party defendants Banner Physicians Capital and Alex Pujari states:

1. Rinku M. Dutt ("Dr. Dutt") is a licensed ophthalmologist and a resident of the Commonwealth of Pennsylvania with a primary place of business at Hempfield Pointe Plaza, Routes 30 & 66, R.R. 17, Box 9, Greensburg, Pennsylvania 15601.

2. Luna Health Management, Inc. ("Luna Management") is a Michigan corporation with its principal place of business at 28501 Orchard Lake Road, Farmington Hills, Michigan 48334. Luna Management owns various ophthamology centers in nine states under variations of the name "Luna Eye Center". Services performed at the Luna Eye Centers include: general eye exams and eye care, glaucoma management, and LASIK surgery. Luna Management is currently the debtor in a Chapter 11 bankruptcy proceeding pending in the Bankruptcy Court for the Eastern District of Michigan (Case No. 08-51067).

3. Dr. Mazin Yaldo ("Dr. Yaldo") is an ophthalmologist and an individual resident of the State of Michigan with an address at 4754 Old Orchard Trail, Orchard Lake Village, Michigan 48324. Dr. Yaldo's principal place of business is located at 28501 Orchard Lake Road, Farmington Hills, Michigan 48334. Dr. Yaldo is an officer and shareholder of Luna Management.

4. Alex Pujari ("Pujari") is an individual resident of the State of Kentucky with an address at 6675 Roberts Road, Robards, Kentucky 42452. Pujari is an officer and shareholder of Luna Management.

5. Banner Physicians Capital ("Banner") is an investment brokerage firm specializing in providing equipment leasing and other financing to the medical industry. Banners' principal place of business is at 127 East 56th Street, Sixth Floor, New York, NY 10022.

6. This Court has jurisdiction over Dr. Dutt's crossclaim pursuant to 28 U.S.C. § 1332.

7. Prior to February 2006, Dr. Dutt operated an ophthalmic medical practice as a sole practitioner.

8. In January 2006, Dr. Dutt met Dr. Yaldo and Pujari for the first time at a medical conference in Hawaii. At the conference Dr. Yaldo and Pujari heavily promoted Luna Management's business model and marketing ideas for selling LASIK eye surgery services. At this time, Dr. Yaldo and Pujari began negotiating with Dr. Dutt regarding a proposed merger of Dr. Dutt's practice with

Luna Management. Dr. Yaldo and Pujari represented to Dr. Dutt that such a merger would result in significant profitability in Dr. Dutt's practice.

9. Dr. Dutt executed an Asset Purchase Agreement with Luna Management dated February 8, 2006. The Asset Purchase Agreement contemplated the formation of a new corporate entity to carry out ophthalmic medical services in Pennsylvania, in which Luna Management would be a 51% shareholder and Dr. Dutt would be a 49% shareholder.

10. In April 2006, Luna Management caused the incorporation of two entities: Luna Eye Centers of Greensburg, P.C. ("Luna Greensburg") and Luna Eye Centers of Cranberry, P.C. ("Luna Cranberry" collectively "Luna Pittsburgh Subsidiaries"). Upon information and belief, these entities were intended to be the New Operating Entity contemplated by the Asset Purchase Agreement.

11. No officers or directors were appointed for the Luna Pittsburgh Subsidiaries. Luna Management took no steps to enact bylaws for the Luna Pittsburgh Subsidiaries and no corporate or shareholder meetings were held, no corporate minutes were taken, and no separate corporate books and records were established. If any officers or directors were appointed, bylaws enacted, meetings held, minutes taken or books and records established, no notice of such was ever given to Dr. Dutt.

12. In or about April 2006, Luna Management caused the installation of medical equipment for the performance of LASIK at the Greensburg, PA office of

Dr. Dutt. By this time, Dr. Dutt was providing medical services at four locations: Greensburg, PA; Natrona Heights, PA; New Kensington, PA; and Cranberry, PA.

13. In or about April 2006, Luna Management established a business practice whereby Dr. Dutt performed medical services for patients and collected revenue for those services. The revenue was deposited in a bank account, from which the money was swept by Luna Management into Luna Management's account. Luna Management arranged for the payment of expenses associated with the provision of medical services by Dr. Dutt for the Luna Pittsburgh Subsidiaries at the four Pennsylvania offices serviced by Dr. Dutt, including payroll, leases, supplies and equipment.

14. During the second half of 2006 and the first half of 2007, a number of instances arose where Dr. Dutt received notices of bills where payment was overdue. Dr. Dutt had numerous conversations with Dr. Yaldo and Pujari about the failure to timely pay bills.

15. During the first half of 2007, Pujari indicated to Dr. Dutt that Luna Management was negotiating a large, private investment in Luna Management from an outside investor. He stated that such investment would among other things, allow Luna Management to pay the bills of the Luna Pittsburgh Subsidiaries, increase marketing for the Luna Pittsburgh Subsidiaries, and expand the business of the Luna Pittsburgh Subsidiaries.

16. Beginning in or about June 2007, Pujari and Dr. Yaldo both contacted Dr. Dutt to request that she sign a loan being obtained by Luna Management. Pujari and Dr. Yaldo both stated that the loan was being offered by an investor who would be providing significant funding in the near future, and that the loan was necessary for interim financing.

17. Over the time period of June 2007 to July 11, 2007, Pujari and Dr. Yaldo made the following statements to Dr. Dutt:

a. The investor would provide millions of dollars of funding to Luna Management and related entities, including the Luna Pittsburgh Subsidiaries;

b. The investment would be used to pay outstanding bills and greatly increase marketing and advertising of the business, including the Luna Pittsburgh Subsidiaries, as well as facilitate the purchase of additional practices and expansion of the business;

c. The value of Luna Management and its subsidiaries, including the Pittsburgh Subsidiaries, would increase, resulting in significant rewards to Dr. Dutt;

d. Pujari stated to Dr. Dutt that the investor would first provide a small amount of interim financing and that to obtain that financing for the Pittsburgh Subsidiaries, Dr. Dutt needed to help gurantee the loan. Pujari further stated that the investor wanted signatures of physicians working for Luna Management to prove their loyalty to Luna Management;

e. The interim financing, in the form of a loan, would be used to pay outstanding bills and engage in greatly increased marketing for the Luna Pittsburgh Subsidiaries;

f. Dr. Yaldo – not Dr. Dutt – would be personally responsible for the loan that Dr. Dutt was being asked to sign;

g. Luna Management would take care of the loan payments, and Dr. Dutt would "not have to worry about it";

h. The loan would be paid off as soon as the further financing was received, which was to occur within three to four months, according to Pujari.

18. On July 11, 2007, Pujari was present at Dr. Dutt's offices in Greensburg, PA. Pujari requested that Dr. Dutt sign certain papers to complete the loan that he and Dr. Yaldo were requesting that Dr. Dutt sign. Pujari stated that the loan papers were for a single loan in the amount of $250,000. Dr. Dutt subsequently learned, in or about April 2008, that her apparent signature was ultimately affixed to loan papers for two separate loans, one of which is the subject of this action and the other was a separate loan from M&T Bank. The combined amount of the loans appears to be approximately $600,000.

19. Pujari said that it was critical to get the documents signed immediately. Pujari did not allow Dr. Dutt the opportunity to review the papers. Pujari insisted that the documents be signed immediately. Pujari did not provide time for the papers to be reviewed by counsel or anyone on Dr. Dutt's behalf.

20. Based on the statements made by Pujari, Dr. Dutt signed certain papers, and Dr. Dutt's signature now appears on an Equipment Finance Agreement from Banner, dated July 11, 2007 (the "Agreement") as well as an invoice for medical equipment, both of which were used to obtain a loan with payment obligations of $280,620 (the "Loan"). Upon information and belief, the Loan was subsequently sold to Plaintiff and is the subject of the current dispute. Pujari did

not allow Dr. Dutt to keep a copy of the papers that he demanded that she sign. Upon information and belief, any documents signed by Dr. Dutt were altered or modified after she signed them.

21. Each of the statements made by Pujari and Dr. Yaldo during the period of June 2007 through July 11, 2007 set forth above in Paragraph 17, upon which Dr. Dutt relied in signing the Loan papers, were false, and Pujari and Dr. Yaldo knew or should have known that the statements were false, as:

a. No investor had committed to provide millions of dollars of financing nor did any investor ever provide such financing to Luna Management, and upon information and belief, at the time of the above statements, there was no probability that this would occur;

b. Luna Management failed to satisfy outstanding bills of the Luna Pittsburgh Subsidiaries and Luna Management never materially increased marketing or advertising on behalf of the Luna Pittsburgh Subsidiaries, and upon information and belief, at the time of the above statements, there was no probability that this would occur;

c. The value of Luna Management and the Luna Pittsburgh Subsidiaries did not increase, and Dr. Dutt received no increase in the value of her ownership in the the Luna Pittsburgh Subsidiaries, and upon information and belief, at the time of the above statements, there was no realistic possibility that this would occur;

d. Dr. Dutt's signature on various papers was used by Pujari, Dr. Yaldo, and Banner to fraudulently obtain the subject Loan and the papers presented by Pujari to Dr. Dutt for signing were not a test of loyalty imposed by the alleged investor;

e. Upon information and belief, Luna Management did not guarantee the Loan;

f. Luna Management failed to pay off the Loan, and Dr. Dutt is now embroiled in litigation for a loan for which she did not receive the benefits. Pujari and Dr. Yaldo knew or should have known of the

likelihood that Luna Management would be unable to pay off the Loan and that Plaintiff would attempt to hold Dr. Dutt responsible for a loan that she had not requested and for which she had not received the proceeds;

g. The Loan was not paid off within three or four months. Pujari and Dr. Yaldo knew or should have know of the likelihood that the Loan would not be paid off within three or four months.

22. Upon information and belief, the false statements made by Pujari and Dr. Yaldo during the period of about June 2007 through July 11, 2007 were not authorized by Luna Management and/or were not within the scope of Pujari's or Dr. Yaldo's employment with Luna Management.

23. Upon information and belief, the false statements made by Pujari and Dr. Yaldo during the period of about June 2007 through July 11, 2007 were made on behalf of Banner. Banner knew or should have known that such statements were false, were being made to Dr. Dutt and that Dr. Dutt could reasonably be expected to, and did, rely on such statements.

24. Upon information and belief, the papers regarding the Loan were prepared by Banner. Upon information and belief, Banner knew or should have known that false information was provided, directly and indirectly, to Dr. Dutt and Plaintiff in connection with the Loan.

25. Dr. Dutt did not receive any money from Banner or from Plaintiff, or any equipment, as a result of signing the papers.

26. Subsequent to July 11, 2007, and until April 2008, Dr. Dutt received no correspondence or other communications regarding the Loan. Upon

information and belief, all payments on the Loan were made by Luna Management and/or by Dr. Yaldo.

27. Neither Plaintiff nor Pujari, Dr. Yaldo or Banner provided Dr. Dutt with copies of Loan documents.

28. In April 2008, Dr. Dutt received an invoice from Plaintiff seeking payment of money due. Through investigation, Dr. Dutt learned that Plaintiff had papers purporting to be an equipment finance agreement signed by Dr. Dutt.

29. The alleged Agreement that is the subject of the Complaint in this action, as attached to the Complaint, and bills received by Dr. Dutt from Plaintiff seeking payment of the monthly payments allegedly due, reference equipment and expenses allegedly paid for by Plaintiff and/or Banner with the proceeds of the Loan. These items consist of (1) a Bausch & Lomb Technolas T laser, serial no. 1454-03/04-1408; (2) an Intralase Corp. Nidek Excimer Laser Corneal Surgery Center, Serial No. 50559; and (3) expenses associated with Corton Glenn advertising.

30. Dr. Dutt has never received, owned or had present in any of her offices, a Bausch & Lomb Technolas T laser with the serial no. 1454-03/04-1408. She has a Bausch & Lomb Technolas laser in her office, since April 2006, which has a different serial number.

31. Dr. Dutt has never received, owned or had present in any of her offices any Nidek Excimer laser.

32. In May 2008, Plaintiff provided Dr. Dutt with copies of invoices it stated had been received by the bank as the basis for issuing the alleged Loan, pursuant to the Agreement. The invoices included a Bausch & Lomb invoice, an Intralase Corp. invoice and a Corton Glenn invoice.

33. Each of the invoices purports to sell or provide to Dr. Dutt as the customer, either equipment or advertising services.

34. Dr. Dutt never received any of the invoices that Plaintiff has in its files. Dr. Dutt never received any of the equipment or services identified in the invoices.

35. With respect to the Bausch & Lomb invoice, Dr. Dutt had no prior knowledge of the equipment referenced in the invoice. In June 2008, Dr. Dutt received a copy of a document filed in the Luna Management bankruptcy action indicating that a Bausch & Lomb laser, with a serial number matching that on the Agreement was being used at a subsidiary of Luna Management in Evansville, Indiana as of April 2006.

36. With respect to the Intralase invoice, Dr. Dutt had no prior knowledge of the equipment referenced in the invoice. The Intralase invoice is inherently questionable because, upon information and belief, Intralaser Corp. does not manufacture Nidek products. Instead, Nidek is a competing manufacturer.

37. With respect to the Corton Glenn invoice, the invoice reflects advertising in the amount of $40,000 on KWIP. Upon information and belief, KWIP is a Spanish language radio station in Portland, Oregon. Dr. Dutt has never advertised on KWIP or any station in Oregon.

38. Upon information and belief, the false invoices were created by Banner and/or Pujari and were submitted to Plaintiff by Banner.

39. Upon information and belief, Banner, Pujari and Dr. Yaldo participated in the forging and submission of the false invoices.

40. Upon information and belief, false documents and/or invoices were prepared by Banner, Pujari and/or Dr. Yaldo in connection with other loans obtained from Plaintiff and/or other financial institutions.

**COUNT ONE: FRAUDULENT MISREPRESENTATION**
**(YALDO / PUJARI / BANNER)**

41. Dr. Dutt repeats and incorporates the allegations contaied in Paragraphs 1-40 as if fully set forth at length herein.

42. Dr. Yaldo and Pujari made false statements to Dr. Dutt regarding the loan. Banner made false statements, directly and indirectly, to Dr. Dutt, Plaintiff, and others, regarding the Loan.

43. The statements made by Dr. Yaldo, Pujari, and Banner were knowingly false.

44. The statements made by Dr. Yaldo and Pujari were made with the intent that Dr. Dutt rely on these statements. The statements made by Banner were made with the intent that Dr. Dutt, Plaintiff and others rely on these statements.

45. Dr. Dutt relied on these statements, and her reliance was justifiable.

47. Dr. Dutt has suffered harm as a result of her reliance on the knowingly false statements made by Dr. Yaldo, Pujari, and Banner.

48. Dr. Dutt is entitled to compensation from each of Dr. Yaldo, Pujari, and Banner for the harm suffered.

**COUNT TWO: NEGLIGENT MISREPRESENTATION (YALDO / PUJARI / BANNER)**

49. Dr. Dutt repeats and incorporates the allegations contained in Paragraphs 1-48 as if fully set forth at length herein.

50. Dr. Yaldo and Pujari made false statements to Dr. Dutt. Banner made false statements, directly and indirectly, to Dr. Dutt, Plaintiff and others.

51. The statements made by Dr. Yaldo, Pujari, and Banner were statements that each should have known were false.

52. Dr. Dutt relied on these statements and her reliance was justifiable.

53. Dr. Dutt has suffered harm as a result of her reliance on the statements Dr. Yaldo, Pujari, and Banner should have known were false.

54. Dr. Dutt is entitled to compensation from each of Dr. Yaldo, Pujari, and Banner for the harm suffered.

**COUNT THREE: UNJUST ENRICHMENT**

**(YALDO / PUJARI / BANNER)**

55. Dr. Dutt repeats and incorporates the allegations contained in Paragraphs 1-54 as if fully set forth at length herein.

56. Banner has received money from Plaintiff by reason of Plaintiffs' purchase of the Loan from Banner, which Loan was the result of the false and/or negligent statements made by Dr. Yaldo, Pujari, and Banner to Dr. Dutt, Plaintiff and others.

57. Upon information and belief, Dr. Yaldo and Pujari received money from Banner and/or Plaintiff, and/or Dr. Yaldo and Pujari received payment of their debts and obligations in the form of the Loan, which Loan was the result of the false and/or negligent statements made by Dr. Yaldo, Pujari, and Banner to Dr. Dutt, Plaintiff and others.

58. Dr. Dutt did not receive any money, property or other benefit from the Loan.

59. Banner's retention of proceeds from Plaintiff, and Dr. Yaldo's and Pujari's retention of the Loan proceeds, and/or the benefit thereof, without appropriate compensation to Dr. Dutt, is inequitable.

60. Dr. Yaldo, Pujari, and Banner have been unjustly enriched by their unlawful conduct, at the expense of Dr. Dutt.

61. Dr. Yaldo, Pujari, and Banner should compensate Dr. Dutt for their unjust enrichment.

**COUNT FOUR: BREACH OF CONTRACT (YALDO)**

62. Dr. Dutt repeats and incorporates the allegations contained in Paragraphs 1-61 as if fully set forth at length herein.

63. Dr. Yaldo promised Dr. Dutt that he would make payments on the Loan obtained pursuant to the Agreement.

64. Dr. Yaldo has refused to make payments on the Loan obtained pursuant to the Agreement.

65. As a result of Dr. Yaldo's refusal to pay, Dr. Dutt has suffered damages.

66. Dr. Yaldo is liable to Dr. Dutt for his refusal to pay.

**COUNT FIVE: PROMISSORY ESTOPPEL (YALDO)**

67. Dr. Dutt repeats and incorporates the allegations contained in Paragraphs 1-66 as if fully set forth at length herein.

68. Dr. Yaldo promised Dr. Dutt that he would make payments on the Loan obtained pursuant to the Agreement.

69. Dr. Yaldo has refused to make payments on the Loan obtained pursuant to the Agreement.

70. As a result of Dr. Yaldo's refusal to pay, Dr. Dutt has suffered damages.

71. Dr. Yaldo is liable to Dr. Dutt for his refusal to pay.

WHEREFORE, Dr. Dutt demands judgment and relief against Dr. Yaldo awarding compensatory damages, costs of suit and attorney's fees, and such other relief as the court deems equitable and just.

Dated: July 30, 2008.

GRAY, PLANT, MOOTY,
MOOTY & BENNETT, P.A.

By /s/ Jeremy L. Johnson
Kathryn J. Bergstrom (#0218431)
Jeremy L. Johnson (#328558)
500 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Attorneys for Defendant
Rinku M. Dutt, M.D.

GP:2407341 v1